Jesse FORD et al *v.* Orean Ford KING et al

79-237                                              594 S.W. 2d 227
Supreme Court of Arkansas
Opinion delivered February 25, 1980

*John W. Walker,* P.A., by: *David E. Parker, Jr.* and *John W. Walker,* for appellants.

*Spencer, Spencer & Shepherd* and *Shackleford, Shackleford & Phillips,* P.A., for appellees.

GEORGE ROSE SMITH, Justice. The appellants intervened in this partition suit, contending they are heirs of Rafe Ford and are therefore entitled to share in proceeds arising from the sale of the land being partitioned. The chancellor dismissed the intervention, because the appellants had not proved their claim of heirship. The only point argued is that the decree is against the preponderance of the evidence.

Rafe Ford owned 200 acres of land in Union county at his death in 1928. Apparently the property remained in the possession of some of his descendants for 50 years. Finally, in March, 1978, nine of Ford's descendants brought this suit for partition and determination of heirship. In May the court entered a decree determining heirship and ordering a partition sale. In June the appellants intervened, asserting that they too are descendants of Rafe Ford. The chancellor

directed that an eighth of the proceeds of sale be retained until the disposition of the intervention, which was dismissed in February, 1979, after an extended hearing.

The appellants are descendants of Susie Ford, who, they contend, was a legitimate or illegitimate daughter of Rafe Ford. At the outset we must reject any claim based upon illegitimacy. In 1928 there could be no inheritance by an illegitimate child with respect to the estate of the father. Crawford & Moses Digest (1921), § 3473. A similar statute was held invalid in *Trimble* v. *Gordon,* 430 U.S. 762, 97 S. Ct. 1459, 52 L. Ed. 2d 31 (1977), but that decision was not retroactive except as to litigation pending on April 26, 1977, the date of the decision. *Compton* v. *White,* 266 Ark. 648, 587 S.W. 2d 829 (1979); *Frakes* v. *Hunt,* 266 Ark. 171, 583 S.W. 2d 497 (1979). This case was not pending on the critical date.

There remains the claim that Susie Ford was Rafe Ford's legitimate daughter. The appellants argue that Sylvia Furlough, Susie Ford's mother, was married to Rafe Ford and that Sylvia lived with Rafe Ford for many years, "during which Rafe Ford fathered Susie and reared her in his house." The trouble with that argument is simply that there is no proof to support the quoted assertion. Susie Ford was born not later than 1874. Her alleged father, Rafe, did not marry her alleged mother, Sylvia Furlough, until 1900. There is no testimony that Rafe even knew Sylvia in 1874, much less that he was then married to her and reared Susie in his house.

The remaining argument is that Susie was the illegitimate child of Rafe and Sylvia and that she became legitimate when Rafe acknowledged her as his child. C & M. Digest, § 3474, substantially re-enacted as Ark. Stat. Ann. § 61-141 (b) (Repl. 1971). That is the only theory having any substantial support in the testimony.

Only three witnesses — Fannie White, Buella Fuller, and Alex Dixon — testified that Rafe Ford ever said that Susie was his daughter. The first two were apparently not related to Rafe Ford and gave no persuasive details about his bare statement (which he might have made in referring to his stepdaughter). The third witness, Alex Dixon, is a grandson of Rafe Ford if Susie was Rafe's daughter, but his testimony

is offset by that of Ray Ford, unquestionably a grandson. The oral testimony narrows down to an issue of credibility, as to which the chancellor's opportunity to weigh the testimony was greatly superior to ours.

The only documentary proof strongly supports the chancellor's conclusion. Rafe Ford was probably married to three different women, but only one marriage license was introduced. It shows that he married Sylvia Furlough in 1900, when he was 41 and she was 39. Sylvia was therefore born about 1861. But the appellants introduced in evidence and rely upon a marriage license showing that Susie Ford was 18 when she married Alexander Dixon, 22, in 1892. Sylvia would therefore have been only 13 when Susie was born in 1874 — a possibility but certainly not a probability. Moreover, the appellees introduced another marriage license reciting the marriage of Susie Ford, 18, to Ben Howard in 1885. If that was the same Susie Ford, Sylvia would have been only six when Susie was born. The record leaves some doubt about whether Sylvia was Susie's mother.

In another respect the appellants' proof is decidedly deficient. That is, the statute is effective only if Susie Ford was actually Rafe's illegitimate daughter. In most cases presenting a similar issue there is substantial proof of the putative father's access to the mother or relationship with her, as by oral testimony, letters, birth certificates, death certificates, marriage licenses, or other evidence. See, for example, *Lucas* v. *Handcock,* 266 Ark. 142, 583 S.W. 2d 491 (1977); *DeWeese* v. *Williams,* 255 Ark. 728, 502 S.W. 2d 94 (1973); *Daniels* v. *Johnson,* 216 Ark. 374, 226 S.W. 2d 571, 15 A.L.R. 2d 1401 (1950); *Martin* v. *Martin,* 212 Ark. 204, 205 S.W. 2d 189 (1947). But here there is no proof whatever that Rafe Ford even knew Sylvia Furlough in 1874, 26 years before he married her, much less that at the age of 15 he fathered her child. We conclude that the appellants' proof leaves the decisive issues too far in the field of speculation to warrant our saying that the chancellor's decision is clearly against the preponderance of the evidence.

Affirmed.

MAYS, J., not participating.